**IN THE COURT OF APPEALS OF IOWA**

No. 16-0632
Filed June 15, 2016

**IN THE INTEREST OF B.B.,**
**Minor child,**

**J.B., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

The father appeals from the juvenile court order terminating his parental rights to his child. **AFFIRMED.**

Colin R. McCormack of Van Cleaf & McCormack Law Firm, L.L.P., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

William E. Sales III of Sales Law Firm, P.C., Des Moines, for minor child.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals from the juvenile court's order terminating his parental rights to his child, B.B., who was born in April 2014.[1] The juvenile court terminated his parental rights pursuant to Iowa Code section 232.116(1)(h) (2015). The father maintains the State has not proved by clear and convincing evidence the child could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(h)(4). He does not claim termination was not in the child's best interests, nor does he claim that a permissive factor weighs against termination.

We review the termination of parental rights de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

B.B. first came to the attention of the Iowa Department of Human Services (DHS) due to the mother's methamphetamine use. B.B. was removed from the mother's care in September 2014 and placed with the father. At the time, the parents reported they were no longer in a relationship. Visits between the mother and B.B. were supposed to take place only when supervised by a DHS worker.

Approximately two months later, the police were called to the father's residence multiple times in one night because the father and mother were intoxicated and arguing in the father's home; B.B. was also present. A broken lamp was lying on the floor, though both the father and mother denied any domestic violence had occurred. Due to the father's level of intoxication, the

---

[1] The mother's rights were also terminated. She does not appeal.

police allowed the mother to take B.B. from the home. As a result of the incident, B.B. was removed from the father's care.

After slow progress in the beginning, the father has been mostly successful at attending visits, parenting appropriately, and taking advantage of mental health and substance abuse treatment that was offered. However, because the mother has continued to use methamphetamine and has not consistently participated in mental health treatment, it has been repeatedly stressed to the father that he cannot have an ongoing relationship with the mother and have custody of B.B. B.B. needs to be the priority in his life.

The father maintains that State used "unsubstantiated rumors and suppositions that he maintains a relationship with the mother" as the grounds for termination. B.B. had been removed from the father's care for approximately fourteen months at the time of the termination hearing. The father was given a six-month extension to work toward reunification in March 2015. Following the extension, the father started having semi-supervised time with B.B at his home. However, soon thereafter, the father sent threatening messages to his sister— with whom B.B. had been placed—and as a result, he was charged with harassment and placed on probation. Additionally, the father allowed the mother to move in with him when she left substance abuse treatment, even though he told DHS he would not do so. As a result, the father's time with B.B. reverted back to being fully supervised and outside of the father's home.

The father missed at least one of B.B.'s medical appointments in July 2015 when the mother gave birth to a new child. The father believed he might be

the biological father of the newborn.[2] His belief that he could be the father is contrary to his assertions that he and the mother did not have a physical or romantic relationship after early 2014.

At the termination hearing in early 2016,[3] the father testified he had not seen the mother since November 9, 2015, because the caseworker had told him on that day he needed to prove he could stay away from the mother. That testimony was contradicted by evidence that a local transit bus was scheduled to pick up both the father and the mother from the father's home in November. Additionally, the former caseworker testified that the father told her he was still in a relationship with the mother in December 2015. The father had also expressed to the caseworker that he did not understand how the mother's issues affected his ability to parent B.B.

We believe the State has proven by clear and convincing evidence that B.B. cannot be returned to the father's care. The father has a lengthy history of being unable to prioritize his relationship with B.B. over his relationship with the mother, who continues to abuse substances. We acknowledge the father testified he was not currently in a relationship with the mother and did not intend to be in a relationship with the mother in the future, but it is clear the juvenile court did not find his testimony credible.[4] Additionally, fourteen months after removal, the father's time with B.B. had not again progressed from fully

---

[2] A paternity test has since ruled him out as the biological father.

[3] The termination hearing took place over two days, on January 13 and February 18, 2016.

[4] We note that both the former and current caseworkers and the guardian ad litem recommended termination of the father's parental rights—presumably for the same reason.

supervised due to concerns he would not keep B.B. safe from the mother. At the time of the hearing, the father was unemployed and planned to sell his trailer because he could not afford the upkeep. The father received monthly Social Security disability benefits, but they were not sufficient to meet his needs.[5] Moreover, although the father did not have any "dirty" tests showing he used drugs or alcohol after completing treatment in July 2015, we are concerned by the father's great difficulty in responding to questions about his "sobriety date" and his inability to provide, with any certainty, either the month or year that he had last consumed alcohol.

The father has not established that B.B. would be safe and have stability in his care, and B.B. needs permanency now. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home")).

We affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**

---

[5] The father owed approximately $13,000 in past due fines for his legal issues.